**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE K.,**[1] | ) | |
| | ) | **No. 22 CV 6523** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | **August 7, 2025** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Christine K. seeks social security income benefits ("SSI") and disability
insurance benefits ("DIB") asserting that she is disabled by arthritis, cardiovascular
conditions, chronic obstructive pulmonary disorder ("COPD"), bipolar disorder, and
depression, among other things. She brings this action pursuant to 42 U.S.C. § 405(g)
for judicial review of the final decision of the Commissioner of Social Security denying
her application for benefits. For the following reasons, Christine's remand request is
granted:

**Procedural History**

Christine filed her SSI and DIB applications in December 2019 claiming
disability onset on December 24, 2017. (Administrative Record ("A.R.") 13.) After
her application was denied initially and upon reconsideration at the administrative
level, (id. at 61-80, 81-116), she sought and was granted a hearing before an

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Christine's first name
and last initial in this opinion to protect her privacy to the extent possible.

Administrative Law Judge ("ALJ"), (id. at 150-51, 181-85). Christine appeared with her attorney at a December 2021 telephonic hearing at which she and a vocational expert ("VE") testified. (Id. at 32-60.) The ALJ concluded in March 2022 that Christine suffers from the severe impairments of "coronary artery disease status post NSTEMI (twice) with percutaneous coronary intervention with stent placement," COPD, bipolar disorder, and depression, but that she is not disabled. (Id. at 25.) The Appeals Council denied Christine's request for review. (Id. at 1-6.) Christine then sought judicial review, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 7).

## Analysis

Christine argues that the ALJ: (1) erred in her subjective symptom assessment; and (2) failed to build a logical bridge between the evidence and her residual functional capacity ("RFC") assessment. (See generally R. 15, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of

2

whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Viewing the arguments and record under this standard, remand is warranted here.

## A.    Subjective Symptom Assessment

Christine argues that the ALJ erred when assessing her subjective symptoms. (R. 15, Pl.'s Mem. at 10-15.) An ALJ's symptom evaluation is entitled to great deference and may only be reversed where it is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb a symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815. The ALJ's assessment fails to meet this standard.

Christine's chief complaint is that the ALJ's assessment depends largely on an erroneous conclusion that she did not receive treatment for her physical conditions after June 2020. (R. 15, Pl.'s Mem. at 11-12.) The ALJ notes that except for a June

2020 hospital admission that resulted in a negative cardiac workup, Christine's cardiac procedures and hospital admissions for chest pain pre-date her alleged onset date. (A.R. 20.) And while the ALJ does not evaluate Christine's arthritis or hip, leg, or back pain at step two in the sequential analysis, (id. at 16-17), in assessing her RFC and credibility the ALJ states that despite Christine's complaints of arthritis, claimed reliance on a cane for two years, and "limited range of motion of the lumbar spine, knees and hips" at her March 2021 consultative examination, there is "no documentation" of complaints of back, knee, or hip pain and "no treatment whatsoever" for the same, (id. at 20-21). The ALJ later emphasizes that Christine has "no ongoing treatment" for "cardiac, respiratory or any musculoskeletal impairment," and notes that she "does not even see a primary care physician on a regular basis." (Id. at 21.)

Christine says the ALJ should have known these statements were incorrect, because: (1) she testified that she saw her primary care physician, Dr. Raad Rashan of Harlem Medical Center, every six to eight weeks for pain, medication, and monitoring; (2) the ALJ twice rejected requests to subpoena records from Dr. Rashan; and (3) the record includes numerous prescriptions Dr. Rashan issued in 2020 and 2021 for pain, hypertension, peripheral edema, high blood pressure, high cholesterol, and more. (R. 15, Pl.'s Mem. at 11-12 (citing A.R. 51-52, 391-423).) The record also includes a February 2021 physical RFC questionnaire Dr. Rashan completed, indicating that Christine suffers from osteoarthritis and other conditions. (A.R. 907-908.) And while the ALJ briefly references that opinion, she does not attribute it to

4

Dr. Rashan and finds the limitations it prescribes "extreme" and "wholly unsupported" because Christine "does not see a doctor" for the issues it highlights. (Id. at 23.)

The government contends there is no error because Dr. Rashan's notes are not in the record, and in any event the ALJ "permissibly denied [Christine's] request[s]" to subpoena Dr. Rashan for failure to comply with applicable regulations. (R. 21, Govt.'s Mem. at 8 (citing 20 C.F.R. § 404.950(d)(1) & (2)).) However, an ALJ has an "independent duty to develop the record adequately even where a claimant is represented at the hearing," *Holofchak v. Astrue*, No. 09 CV 5204, 2011 WL 662735, at *1 (N.D. Ill. Feb. 14, 2011), and the logic underlying those denials was faulty in several respects. Indeed, the ALJ said one subpoena request neither provided the address for Harlem Medical Center nor indicated that the facility had "refused to provide records." (A.R. 13-14.) But the request describes attempts to contact the facility, (id. at 383 (stating "provider does not appear to be cooperating with our request")), and the facility's address is listed in an attachment to the request, (id. at 385).

Further, even assuming the ALJ properly denied Christine's subpoena requests, she went on to draw unfavorable inferences from the absence of the records and ignored prescriptions evidencing treatment. This error warrants remand. *See Young v. Astrue*, No. 08 CV 5062, 2011 WL 4737224, at *5 (N.D. Ill. Oct. 5, 2011) (remanding in part because "ALJ cannot reasonably infer that the 'failure to submit medical reports establishes that [a claimant] did not receive any medical treatment'

especially when the Plaintiff has provided a reasonable explanation for their absence") (quoting *Herron v. Shalala,* 19 F.3d 329, 336 & n.11 (7th Cir. 1994)); *see also Harris v. Astrue*, No. 10 CV 7397, 2012 WL 1441430, at *13 (N.D. Ill. April 25, 2012) (remanding where ALJ speculated that "absence of some physical therapy records necessarily meant . . . Plaintiff did not attend particular physical therapy sessions," and other records demonstrated claimant participated in "a significant amount" of physical therapy).

These errors colored the remainder of the ALJ's subjective symptom assessment. To be sure, the ALJ called out that Christine's March 2021 x-rays of the hip and spine—the only imaging in the record—were ordered in connection with her disability claim rather than for ongoing treatment. (A.R. 20, 23.) The ALJ also doubted Christine's cane use because she had "no treatment" for back, hip, and leg pain and voiced no complaints about the same outside of her consultative examination, which the ALJ said was the only time she presented with a cane. (Id. at 21.) The government argues that the ALJ properly considered the x-rays because the agency ordered them and Christine cannot demonstrate her cane is medically necessary because she bought it herself.[2] (R. 21, Govt.'s Mem. at 10.) But

---

[2] A cane "must be incorporated in an RFC if it is a medical necessity," *Heath M. v. Kijakazi*, No. 20 CV 3384, 2023 WL 3652427, at *3 (N.D. Ill. May 25, 2023) (citing *Tripp v. Astrue*, 489 Fed. Appx. 951, 955 (7th Cir. 2012)), meaning "medical documentation establish[es] the need for [the] device to aid in walking or standing, and describe[s] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

the court agrees with Christine. In concluding that there is "no support" for Christine's cane use—let alone that it is not medically necessary—the ALJ impermissibly assumed Christine did not use her cane at treatment visits with Dr. Rashan and ignored that Dr. Rashan not only prescribed her pain medication, but also opined in February 2021 that she needed the cane for occasional standing or walking and experienced osteoarthritis with pain in her back and knee. (R. 15, Pl.'s Mem. at 14 (citing A.R. 21, 391-423, 907-08).) The ALJ's discussion of Christine's x-rays is also flawed because it highlights Christine's purportedly scant treatment. (A.R. 21.) As such, the ALJ must also revisit Christine's x-rays and use of cane on remand.

Christine next complains that the ALJ did not explain how her daily activities—including driving her son and boyfriend to and from their jobs, walking to and from Dunkin Donuts, "working out," and helping care for her mother-in-law after her stroke—are inconsistent with her allegations of severe leg and back pain. (R. 15, Pl.'s Mem. at 15 (citing A.R. 20).) The court agrees with the government that some of these activities suggest Christine is not entirely debilitated. (R. 21, Govt.'s Mem. at 11.) Yet Christine is correct that the record is devoid of details about them. (R. 15, Pl.'s Mem. at 15.) On remand the ALJ must reexamine the activities in light of the evidence she sidestepped in her first decision, treating them with the care required, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), explaining the inconsistencies between those activities and the medical evidence and Christine's complaints of pain, *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), and considering any limitations

in how she performs these activities, *see, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (remanding where ALJ ignored claimant's qualifications as to how he carried out activities). Absent such discussion and assessment of all relevant evidence, the court cannot trace the ALJ's path of reasoning from Christine's daily activities to her conclusions about the same.

In sum, the ALJ ignored evidence and made incorrect factual assertions and assumptions to discount Christine's credibility. *See Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (finding that ALJ "may not simply ignore evidence" or "rely on a mistake of fact to reject a claimant's testimony").) Because these errors informed the ALJ's assessment of Christine's physical symptoms, they are not harmless errors. *See Ohms v. Barnhart*, No. 04 CV 5365, 2005 WL 5178687, at *13 (N.D. Ill. Oct. 26, 2005) (remanding where ALJ "makes a decision based upon a mistake of fact on an issue that may have come out differently if the mistake had not been made"). Further, given the potential importance of Dr. Rashan's treatment records, on remand the ALJ must ensure that she fully and fairly develops the record. *See Cardona v. Colvin*, No. 14 CV 5380, 2016 WL 3351574, at *4 (N.D. Ill. June 13, 2016) (remanding where "ALJ's decision not to gather evidence either prejudiced the claimant or left an evidentiary gap" (citing *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994))).

## B. RFC Assessment

Christine asserts that the ALJ erred when developing her RFC. An RFC measures the tasks a person can perform given her limitations based on "all the

relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's limitations, including those that are not severe, when developing the RFC, and may not dismiss a line of evidence that is contrary to the ruling. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether [she] considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). Here, the ALJ found Christine capable of light work involving: "no climbing ladders, ropes or scaffolds; no working around unprotected heights, open flames, or unprotected dangerous moving machinery; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no more than moderate noise levels (per DOT description); and simple, routine tasks." (A.R. 18-19.)

As to the ALJ's mental RFC assessment, Christine complains the ALJ: (1) failed to explain how limiting her to "simple, routine tasks" accommodates her moderate limitation on concentration, persistence, and pace ("CPP"); and (2) ignored her subjective complaints. (R. 15, Pl.'s Mem. at 9-10.) It is axiomatic that a limitation to simple and routine tasks may not suffice to accommodate a moderate CPP limitation. *See Martin v. Saul,* 950 F.3d 369, 373-74 (7th Cir. 2020) (holding that "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be"). But to warrant remand on this basis, the claimant must support the need for something

9

more.  *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error in RFC assessment harmless where claimant presents "no evidence that [CPP] deficits keep him from performing simple, routine, and repetitive tasks").  Christine did not do so here.

Christine tries to show her need for greater restrictions by pointing to her testimony that she has difficulty completing tasks, concentrating, and sustaining attention for more than 20 to 30 minutes at a time, (R. 15, Pl.'s Mem. at 10 (citing A.R. 332)), her reports of depression, anxiety, intrusive thoughts, nightmares, irritability, and low energy during therapy sessions, (id. at 9 (citing A.R. 932, 947, 949, 952, 954-55, 982, 984)), and the state agency consultant's opinion on reconsideration that she is moderately limited in CPP for extended periods, which Christine says translates to two-hour increments, (id. at 10 (citing A.R. 96)).  But even if Christine could only work in two-hour increments, she could still complete an eight-hour workday with typical breaks.   (See R. 21, Govt.'s Mem. at 6-7); *see also Colleen M. v. Saul*, No. 19 CV 1287, 2021 WL 822934, at *5 (N.D. Ill. March 4, 2021) (collecting cases reflecting typical workday of "two 15-minute breaks after two hours of work and one 30-minute break mid-shift" for lunch).  And the ALJ properly relied on objective evidence—Christine's normal mental status examinations and treatment notes reflecting her doing well—and inconsistent testimony to discount her claimed need for greater restriction.  (R. 21, Govt.'s Mem. at 7 (citing A.R. 21-22).)

Christine also challenges the ALJ's physical RFC assessment, arguing it is "internally inconsistent" because it largely relies on the state agency consultant's opinion on reconsideration while noting that this opinion "failed to mention [Christine's] coronary artery disease, history of myocardial infarctions and COPD," and making no further reductions to her RFC to account for those conditions. (R. 15, Pl.'s Mem. at 5-6 (citing A.R. 23).) This argument has traction.

Unlike the other opinions of record, the ALJ deemed this consultant's opinion "mostly persuasive, except for limitations on vibrations." (A.R. 23.) Indeed, the ALJ fashioned an RFC that tracks with the consultant's opinion except excluding the vibration limitation and adding a restriction for occasional balancing and kneeling. (Id. at 18-19.) But it is not apparent how an occasional balancing and kneeling limitation accommodates the cardiac and respiratory conditions the ALJ deemed severe. Nor does the ALJ explain the additional restriction in any discernible way. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (remanding where ALJ "failed to articulate in a rational manner the reasons for [her] assessment" of claimant's RFC). And while the government points out that the consultant's report refers to "heart disease," Christine's 2020 hospitalization for precordial pain, and consultative examination findings reflecting normal "lungs [and] cardiac findings," (R. 21, Govt.'s Mem. at 4 (citing A.R. 95)), the consultant does not list Christine's cardiac and respiratory conditions as "impairments," (A.R. 89). In any event, because the ALJ does not rely on or recognize that fact, it has no bearing on this court's analysis. *See*

11

*Stewart*, 561 F.3d at 684 (finding that "a court must confine itself to the reasons supplied by the ALJ" when reviewing RFC assessment).

The government also argues that the ALJ need not base her RFC assessment on a medical opinion because she relies on other substantial evidence, including normal findings at Christine's consultative examination, her June 2020 "negative" cardiac workup, and purportedly scant treatment and follow-up. (R. 21, Govt.'s Mem. at 4-5 (citing A.R. 20-21).) However, the ALJ still fails to build the requisite logical bridge between the cardiac and respiratory conditions she found severe and the RFC she assessed. *See Butler*, 4 F.4th at 501. And Christine points to more evidence the ALJ did not address, including complaints of shortness of breath during her 2017 emergency room visits, a stress test that same year, and a consultative examination in March 2021. (R. 15, Pl.'s Mem. at 7-8 (citing A.R. 486, 506, 513, 587, 817, 890).) Further, Christine notes the ALJ ignored a June 2017 echocardiogram with moderate to severe findings consistent with these complaints and erroneously concluded there is "no evidence of cardiac deficit since 2016." (Id. (citing A.R. 21, 760-61).)

The government responds that the ALJ "had a good overall understanding of the evidence," need not address every piece of it, was "clearly aware" of Christine's hospitalizations, and correctly acknowledged that her "respiratory exam was normal" at the consultative examination. (R. 21, Govt.'s Mem. at 5 (citing A.R. 20).) In another context, some of Christine's complaints—many of which concern pre-onset date symptoms and tests—might amount to inactionable nitpicking. But "[w]hile under no obligation to 'discuss every piece of evidence in the record,' an ALJ may not

'ignore a line of evidence supporting a finding of disability'." *Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025) (quoting *Deborah M.*, 994 F.3d at 788). And given the ALJ's improper conclusions about Christine's treatment and credibility and her failure to explain how the RFC connects to the evidence, the ALJ must also address these complaints and evidence on remand.

## Conclusion

For the foregoing reasons, Christine's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

ENTER:

Young B. Kim
United States Magistrate Judge

13